# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cv-00400-RJC
# (3:15-cr-00272-RJC-DSC-1)

| | |
|---|---|
| FARSHIEN BAGHALZADEH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 1].

## I. BACKGROUND

On November 17, 2015, Petitioner Farshien Baghalzadeh ("Petitioner") was charged in a Bill of Information with one count of drug trafficking conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count One) and one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Two). [Criminal Case No. 3:15-cr-00272-RJC-DSC ("CR"), Doc. 1: Bill of Information]. On November 18, 2015, Petitioner and the Government entered into a Plea Agreement pursuant to which Petitioner agreed to plead guilty to both Counts One and Two in exchange for charging concessions made by the Government. [CR Doc. 3: Plea Agreement].

In the Plea Agreement, Petitioner stipulated that there was a factual basis for his guilty plea and that he had read and understood the Factual Basis that was attached to his Plea Agreement and that the Court and the United States Probation office may use it, without objection by Petitioner,

to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a). [CR Doc. 3 at ¶ 14]. The Factual Basis, which "[did] not attempt to set forth all of the facts known to the United States" at the time it was prepared, was filed with the Plea Agreement. [CR Doc. 2 at 1]. It provided, in pertinent part, as follows:

> 1. On September 8, 2015, a confidential information ("CI") purchased approximately 270 grams of cocaine from Defendant Farshien Baghalzadeh. Law enforcement conducted constant surveillance leading up to the transaction, as well as after the transaction, and observed the Defendant return to his residence.
>
> 2. A half hour later, the Defendant then met with another individual and left. The police stopped the Defendant and obtained consent to search his residence. In an abundance of caution, they also obtained a search warrant.
>
> 3. In the Defendant's residence, they found several additional grams of cocaine, approximately $75,301 in U.S. currency, and 6 firearms (2 of which were incomplete weapons but included the receiver), all of which he knowingly possessed. The Defendant had evidence of travel to Los Angeles, Dallas, New York, and Atlanta. The law enforcement team also located numerous deposit slips for multi-thousand-dollar transactions, some indicative of structuring to avoid the currency transaction reporting requirement….
>
> 4. During a debriefing, the CI had stated that he had picked up 9 ounces (252 grams) of cocaine from the Defendant on approximately 6 occasions.
>
> 5. Based on all of the aforementioned cocaine and proceeds, the amount of cocaine and laundered cocaine proceeds that were known to and reasonably foreseeable by the Defendant was in excess of five (5) kilograms but less than fifteen (15) kilograms.

[Id. at 1-2].

In the Plea Agreement, the parties agreed "to reserve their right to argue whether the Defendant should receive a two-level weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)." [CR Doc. 3 at ¶ 7]. Finally, Petitioner agreed to waive the right to contest his conviction and

sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶ 19].

At the plea hearing, the Court reviewed the Bill of Information with Petitioner and confirmed Petitioner's understanding of the charges. [CR Doc. 34 at 3-4: Plea Hearing Tr.]. The Bill of Information charged Petitioner as follows on Count One:

> From at least as early as in or about June 2015 to in or about September 2015, in Union County, within the Western District of North Carolina, and elsewhere, [Petitioner] did knowingly and intentionally conspire and agree with other person, known and unknown to the United States, to distribute and to posses with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

[CR Doc. 1 at 1]. As for Count Two, the Information charged Petitioner as follows:

> From at least as early as in or about June 2015 to in or about September 2015, in Union County, within the Western District of North Carolina, and elsewhere, [Petitioner] did knowingly combine, conspire, confederate and agree with other persons, known and unknown to the United States, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, the manufacture, importation, sale, or distribution of a controlled substance, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specific unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).
>
> All in violation of Title 18, United States Code, Section 1976(h).

[Id. at 1-2]. The Court then, on Petitioner's request, accepted Petitioner's guilty plea to the two counts in the Information. [Doc. 34 at 5]. In the plea colloquy, after again affirming that he fully

3

understood the charges against him, [Id. at 6], Petitioner affirmed, among other things, that he was in fact guilty of the two counts to which he was pleading guilty, [Id. at 9]

In summarizing the Plea Agreement at the plea hearing, the Government noted that Petitioner understood that the charging concessions by the Government were made in exchange for Petitioner's agreement to plead guilty to Counts One and Two. [Id. at 10]. The Government also noted Petitioner's stipulation that there was a factual basis for his plea and the parties' agreement that a two-level enhancement applied to the money laundering charge, but that the parties reserved their right to argue whether Petitioner should receive a two-level firearm enhancement and. [Id. at 11]. Petitioner testified that he understood and agreed to those terms. [Id. at 13]. Petitioner also testified that he had read the Factual Basis that was filed with his Plea Agreement, and that he understood it and agreed with it. [Id.]. Petitioner then testified that no one had threatened, intimidated or forced him to enter a guilty plea; that he had enough time to discuss with his attorney any possible defenses Petitioner may have to the charges; and that he was satisfied with the services of his attorneys in this case. [Id. at 13-14]. Finally, Petitioner testified that he had heard and understood all parts of his plea hearing and still wished to plead guilty. [Id. at 14]. Thereafter, the magistrate judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 15].

Petitioner was sentenced on December 13, 2016. [CR Doc. 35: Sentencing Hearing Tr.]. Before this hearing, a probation officer prepared a Presentence Investigation Report ("PSR"). [CR Doc. 16: PSR]. In the PSR, the probation officer recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) on Count One based on Petitioner's possession of multiple firearms and found a Total Offense Level (TOL) of 31. [Id. at ¶ 18]. The probation officer also provided Petitioner's extensive criminal history, which included among many other things, two dismissed

4

charges of possession of a stolen motor vehicle in Union County, North Carolina, one from 2002 and one from 2008. [Id. at ¶¶ 58, 65]. Despite Petitioner's extensive criminal history, Petitioner's criminal history score was 0 and his Criminal History Category was I. [Id. at ¶¶ 49, 50]. Petitioner objected to the application of the two-level firearm enhancement, arguing that it was "'clearly improbable' that the weapons he possessed were connected to the instant offense." [Id. at 18].

At Petitioner's sentencing hearing, the parties again stipulated to there being a factual basis to support Petitioner's guilty plea and that the Court could rely on the offense conduct set forth in the presentence report to establish that factual basis. [CR Doc. 35 at 4]. Based on that stipulation, the Court found that there was a factual basis to support the entry of the guilty plea. [Id.]. Counsel for the parties then argued extensively regarding and presented evidence in support of their relative positions on the application of the two-level firearm enhancement. [See id. at 5-39].

The Court found that, although it was "a close call," it was not "clearly improbable" that three operable, loaded firearms found hidden under the kitchen sink in Petitioner's home, in the same room where money laundering activity in connection with the drug trafficking conspiracy was evidently occurring, were connected to the drug trafficking. [CR Doc. 35 at 39]. Applying the two-level enhancement, the Court accepted the PSR's TOL of 31. The Court noted Petitioner's Criminal History Category of I and found an advisory guideline range of 108 to 135. [Id. at 40]. After hearing arguments of counsel and statements by various witnesses on Petitioner's behalf, the Court addressed Petitioner's criminal history. The Court discussed Petitioner's "40 interactions with the justice system, [ ] between '97 and 2010," and noted that Petitioner is "a remarkable criminal history category I. I've never seen anything like it." [Id. at 48]. The Court viewed Petitioner's criminal history as "show[ing] a disrespect for the law." [Id.]. Petitioner's counsel did not dispute the record in the PSR. [Id. at 48-9]. After reviewing the factors considered in its

5

determination, the Court imposed a sentence of 108 months' imprisonment on each count to be served concurrently. [Id. at 26]. On December 27, 2016, judgment was entered on Petitioner's conviction. [CR Doc. 26: Judgment].

Petitioner appealed his sentence to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit dismissed the appeal because the issue Petitioner sought to appeal fell squarely within the scope of Petitioner's knowing and voluntary waiver of his right to appeal. [CR Docs. 28, 38]. Petitioner timely filed the present motion to vacate on June 23, 2018, in which he argues that his counsel was ineffective for four reasons: (1) for failing "to provide Petitioner with an accurate description of the law regarding what must be shown when pleading guilty," (2) for failing to properly investigate and convey discovery and, therefore, coercing Petitioner to plead guilty, (3) for improperly handling the two-level firearm enhancement under § 2D1.1(b)(1), and (4) failing to correct findings by the probation officer in Petitioner's PSR regarding two counts of possession of a stolen vehicle, which were erroneously entered into Union County's records due to a typographical error.[1,2] [Doc. 1]. The Government filed its response on October 9, 2018. [Doc. 3].

---

[1] Petitioner also claimed prosecutorial misconduct in his Section 2255 motion to vacate. [Doc. 1 at 5, Doc. 1-1 at 15]. Petitioner, however, has since withdrawn that claim. [Doc. 10 at 1].

[2] On withdrawing his claim that the Government engaged in "egregious prosecutorial misconduct" in causing an FBI agent to fabricate testimony that one of the firearms found in Petitioner's residence was stolen, Petitioner purports to assert an additional ground of ineffective assistance. Namely, in Petitioner's Reply to Government's Surreply to Petitioner's Motion to Vacate, Petitioner asserts that because the "Government obviously knew of the FBI agent's expected testimony regarding the gun, and possessed a police report as confirmation," prior discovery of the information should have been made to defense counsel and Petitioner's counsel "therefore should have objected when the information was first presented, and his failure to do so constitutes ineffective assistance." [Doc. 10 at 2]. Petitioner cannot amend his Section 2255 Petition through argument made in a surreply brief or at this stage of the proceedings without a proper motion. See Fed. R. Civ. P. 15(a)(2). The Court, therefore, declines to consider this argument. The Court notes that because Petitioner has failed to show prejudice, any claim of ineffective assistance on this ground fails in any event.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Ci1r. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Here, Petitioner claims four grounds for his claim of ineffective assistance of counsel related both to his guilty plea and to his sentencing. The Court addresses them in turn.

### A. Guilty Plea

#### 1. Pre-Plea Discovery, Failure to Investigate and Coercion

Petitioner argues that he was coerced into pleading guilty "[d]ue to counsel's paltry investigation of Petitioner's case." [Doc. 1-1 at 8]. In support of this argument, Petitioner contends that he received a phone call from one of his attorneys, Eben Rawls, the day of Petitioner's deadline to sign a second plea agreement offered by the Government in which Rawls "demand[ed] that Petitioner return [to counsel's office] with the signed plea agreement before 5:00 p.m. that day or the government was going to file a superseding indictment." [Doc. 1-1 at 8]. Petitioner states this "demand" was made in the context of counsel not allowing Petitioner "to view the discovery responses to his discovery requests until 434 days after Petitioner's arrest and 28 days before Petitioner's sentencing hearing." [Id.]. Petitioner contends that when he finally had the opportunity to view discovery responses, "he learned he had several possible defenses that could have been employed on his behalf" and "Petitioner would not have agreed to plead guilty" if his counsel had "adequately investigated Petitioner's case and timely met with Petitioner in order to

review the discovery responses." [Id.]. Petitioner, however, does not state what these defenses are or anything to show that a choice to not plead guilty would have been objectively reasonable.

Petitioner's sworn testimony at his plea hearing belies any assertion that he was coerced into pleading guilty based on his attorneys' failure to investigate or otherwise. Petitioner testified, under oath, that no one threatened, intimidated or forced him to plead guilty; that he had enough time to discuss possible defenses with his counsel; and that he was satisfied with the services of his attorneys. [CR Doc. 34 at 13-14]. Furthermore, counsel's communication with Petitioner conveying that the Government intended to file a superseding indictment if Petitioner did not sign the plea agreement by the end of business reflects effective, not ineffective, assistance of counsel. Had counsel failed to communicate this message and Petitioner lost the opportunity to plead guilty under the terms agreed upon, Petitioner might have a credible argument on that ground.

With respect to counsel's alleged failure to allow Petitioner to see the Government's responses to Petitioner's discovery request until over a year after Petitioner's plea, Petitioner has failed to allege or show how anything contained in that discovery would have changed the outcome of these proceedings in any way or what possible defenses Petitioner claims he discovered. Accordingly, to the extent counsel's performance may have been deficient in this regard, Petitioner has wholly failed to show extraordinary circumstances that would allow the Court to ignore Petitioner's sworn plea hearing testimony. See Lemaster, 403 F.3d at 221-22.

Finally, Petitioner has not shown there was an objectively reasonable probability for him to have proceeded to trial but for his counsel's alleged errors. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

Accordingly, Petitioner's claim of ineffective assistance on this ground will be dismissed.

### 2. Insufficient Understanding of Conspiracy Elements

Petitioner argues that his counsel "failed to provide Petitioner with an accurate description of the law regarding what must be shown when pleading guilty," [Id. at 4], and that Petitioner, therefore, pleaded guilty without understanding that his conduct did not fall within the charges, Id. at 5. Petitioner contends the record was clear that there existed neither a factual basis for the plea nor evidence proving that Petitioner conspired with anyone, as [the confidential informant] at the time of the offense was operating as a government informant." [Doc. 1-1 at 3]. Petitioner argues that the Government showed only that there was a drug buy on September 9, 2015, by confidential informant, Joshua King, and that no other evidence of a conspiracy or more than a buyer-seller relationship was shown. [Id. at 6]. Petitioner also generally contends that the factual basis failed to establish that Petitioner had engaged in a money laundering conspiracy but makes no other argument in support of this claim. [Doc. 1-1 at 5].

Again, Petitioner's arguments are belied by his sworn testimony at his plea hearing. At his hearing, Petitioner affirmed his understanding of the nature of the charges against him after the Court reviewed them with Petitioner. [CR Doc. 34 at 3-4]. Petitioner affirmed that he was in fact guilty of the charges set out in the Bill of Information. [Id. at 9]. Petitioner also agreed that there was a factual basis for his guilty plea and that he read, understood, and agreed with the Factual Basis that was filed with his Plea Agreement. [Id. at 13; CR Doc. 3 at ¶ 14]. Finally, Petitioner testified that he heard and understood all parts of his plea hearing and still wished to plead guilty. [Id. at 14]. Plaintiff, again, has failed to show the extraordinary circumstances necessary for the Court to disregard Petitioner's sworn plea hearing testimony on this issue. See Lemaster, 403 F.3d at 221-22.

With respect to Petitioner's charge of drug trafficking conspiracy in particular, Petitioner contends that his counsel was ineffective for allowing Petitioner to plead guilty when there was no evidence that Petitioner conspired with anyone other than the confidential informant, Joshua King. [Doc. 1-1 at 3]. Petitioner's counsel's performance was not deficient in this regard. While is true that a defendant cannot conspire with a government agent acting as an informer, see United States v. Chase, 372 F.2d 453, 459 (4th Cir. 1967), an ongoing conspiracy is not extinguished where a party to the conspiracy begins to cooperate with the government, see United States v Robinson, 186 F. App'x 375, 378 (4th Cir. 2006). Here, the CI admitted that he had purchased nine ounces of cocaine from Petitioner on six different occasions. [CR Doc. 16 at ¶ 9]. Petitioner has not shown that the CI was cooperating on each of these occasions. See Farrier v. United States, 2017 WL 9482517, at *4 (E.D.N.C. 2017) (denying ineffective assistance claim where there was no indication that the informant was acting as a government agent during the entire course of the conspiracy and the petitioner faced a longer sentence by not pleading guilty), appeal dismissed, 727 F. App'x 50 (4th Cir. 2018). The United States was not required to identify the specific individuals with whom Petitioner conspired. See e.g., Rogers v. United States, 340 U.S. 367, 375 (1951) (recognizing "at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown"). Rather, it was sufficient to show that Petitioner (1) entered into an agreement with one or more persons to engage in a controlled substance offense; (2) had knowledge of the conspiracy, and (3) knowingly and voluntarily participated in the conspiracy. See United States v. Howard, 773 F.3d 519, 525 (4th Cir. 2014).

Accordingly, Petitioner's assertion that his counsel was ineffective for allowing Petitioner to plead guilty to the conspiracy charges because they lacked a factual basis due to the failure to identify specific co-conspirators is without merit.

Furthermore, Petitioner cannot show prejudice in any event because he has not shown it would have been objectively reasonable for him to proceed to trial, particularly where he would have faced charges carrying maximum sentences of 25 years in prison.

In sum, Petitioner has failed to show deficient performance and prejudice as to these grounds for ineffective assistance of counsel. They will, therefore, be dismissed.

**B.  Sentencing.**

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999).

**1.  Firearm Enhancement**

Petitioner argues that counsel provided ineffective assistance at sentencing due to the "failure to challenge the Court's error [in applying the firearm enhancement] with research and case law." [Doc. 1-1 at 9]. Namely, Petitioner asserts that counsel should have challenged the use of the drug buy and money laundering on September 9, 2015, to justify the enhancement and should have challenged the connection between the firearm and any drug offense. [Id. at 8-13]. Petitioner argues that he was prejudiced because, had these arguments been made, the Court would not have applied the two-level enhancement. [Id. at 13-14].

Petitioner's argument is without merit. Petitioner's counsel raised these challenges to the firearm enhancement, both in the objections to the PSR and at sentencing. [See Doc. 16 at 18, Doc. 35 at 33-37]. Petitioner's possession of the firearms was part of his relevant conduct, and his

13

counsel's objections and argument at the sentencing hearing certainly fell well within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Furthermore, Petitioner cannot show prejudice because counsel's objections were overruled by the Court, and Petitioner has not shown that there is a reasonable probability that he would have received a lower sentence. See Royal 188 F.3d at 249.

As such, Petitioner's claim of ineffective assistance of counsel on this ground is denied.

### 2. Criminal History Score

Finally, Petitioner argues that his counsel was ineffective for failing to object to the PSR's inclusion of two charges against Petitioner for possession of a stolen vehicle in Union County, North Carolina. [Doc. 1-1 at 14]. Petitioner claims that these charges were erroneously entered into the Union County records and that he attempted to give his attorney documentation proving this error. Plaintiff also claims that he told counsel for over a year that he wanted to object to the inclusion of these counts in his PSR and that Petitioner's attorney "told Petitioner that it did not matter because the charges were dismissed and no points would be assessed to Petitioner's Criminal History Calculation because of them." [Id. at 14]. Petitioner contends that these two counts "played a part in the judge not granting Petitioner a variance in his sentencing guidelines." [Id.].

Plaintiff's allegations on this issue is wholly conclusory, unsupported by the record, and without merit. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). Any decision by Petitioner's counsel not to challenge these two dismissed charges in this context of Petitioner's extensive criminal history, as noted by the Court at sentencing, certainly fell within the range of reasonable professional assistance.

Furthermore, Petitioner again fails to show that he was prejudiced by the inclusion of these charges in his PSR because he has not shown that the charges were not his, despite arguing that he has documentation to show they are not. Moreover, there is no evidence that the Court's decision to deny a downward variance would have been affected by the removal of two charges in the context of Petitioner's notably extensive criminal history.

The Court, therefore, denies Petitioner's motion to vacate based on this ground.

In sum, this claim should be denied for Petitioner's failure to show that his counsel's performance was deficient or that Petitioner was prejudiced by counsel's conduct at sentencing. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. The Government's Motion for Leave to File a Surreply [Doc. 7] and Petitioner's Motion for Leave to File a Surreply [Doc. 9] are **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: November 14, 2019

Robert J. Conrad, Jr.
United States District Judge